IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**UNITED STATES OF AMERICA**

      Plaintiff,                                                 **No. 6:11-CR-60146-MC**
                                                              **No. 6:12-CR-00021-MC**

      v.                                                     OPINION AND ORDER

**LORINDA MARIE GOODIN,**

      Defendant.

_____

**MCSHANE, Judge**:

Defendant Lorinda Goodin files this Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(C)(1)(A). Def.'s. Mot. Compassionate Release, ECF No. 75 ("Def.'s Mot."). Because Ms. Goodin fails to demonstrate extraordinary and compelling circumstances justifying compassionate release, her motion is DENIED.

## LEGAL STANDARD

Congress, through the First Step Act, amended 18 U.S.C. § 3582(c)(1)(A) to allow a defendant to file a motion directly with the district court for compassionate release after exhausting all administrative remedies. The Court may reduce a defendant's sentence after considering the applicable section 3553(a) factors if:

(i)      extraordinary and compelling reasons warrant such a reduction; or

(ii)     the defendant is at least 70 years of age, has served 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the BOP that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

1—OPINION AND ORDER

(iii)    and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Congress delegated the Sentencing Commission with defining "extraordinary and compelling reasons" through issued policy statements. *United States v. Aruda*, 993 F.3d 797, 800 (9th Cir. 2021) (per curiam). Currently, "the Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant." *Id.* at 802. While U.S.S.G. § 1B1.13 is non-binding, the Sentencing Commission statements therein "may inform a district court's discretion" regarding defendant-filed compassionate release motions. *Id.* (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)). U.S.S.G. § 1B1.13(2) advises courts against reducing the sentences of defendants who would endanger the community. *See United States v. Blick*, No. CR17-0216-JCC, 2021 WL 1313110, at *1 (W.D. Wash. Apr. 8, 2021) (noting that the court finds the consideration appropriate); *see also United States v. Arceneaux*, 830 F. App'x 859 (9th Cir. 2020) (affirming denial of compassionate release because the defendant remained a danger).

## **DISCUSSION**

The Court originally sentenced Ms. Goodin to 275 months in prison after she pleaded guilty to four counts of armed bank robbery and one count of felon in possession of ammunition. Opinion and Order 2, ECF No. 70. Ms. Goodin has served 12 years of her sentence and has a projected release date of August 25, 2030. Def.'s Mot. 20. She now requests compassionate release based on an alleged assault committed against her by a medical officer, and the lack of rehabilitative services available at her facility. Def.'s Mot. 4.

To receive compassionate release, Defendant must show (1) that he has fully exhausted all administrative remedies, (2) that extraordinary and compelling circumstances warrant a sentence

2—OPINION AND ORDER

reduction, and (3) that his release is consistent with the sentencing factors under 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A). For the purposes of this Motion, the Court assumes, without deciding, that Defendant has exhausted administrative remedies. Nonetheless, because she fails to meet her burden under both the second and third prongs, this Court DENIES Ms. Goodin's Motion for Compassionate Release. *See United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021) ("[A]lthough a district court must perform this sequential inquiry before it grants compassionate release, a district court that properly denies compassionate release need not evaluate each step.").

I.    Sexual Assault Allegations

Ms. Goodin broadly alleges that a medical officer assaulted her. Def.'s Mot. 1. However, she does not specify the date of the incident nor the name of the medical officer. Pursuant to §1B1.13(b)(4), experiencing sexual or physical abuse while incarcerated is listed as an extraordinary and compelling reason, so long as the abuse was "committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody over the defendant." U.S.S.G. § 1B1.13(b)(4). To contextualize the amendment to include subsection (b)(4) on the list of circumstances in § 1B1.13(b) that could amount to "extraordinary and compelling reasons," the United States Sentencing Commission stated, "[t]his provision responds to the Department of Justice's ("DOJ") suggestion that a sentence reduction may be appropriate where an individual in BOP custody has been determined to have been the victim of sexual assault perpetrated by BOP personnel."[1] Section 1B1.13(b)(4) defines victim of abuse as:

> (4) Victim of Abuse.--The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:

---

[1] United States Sentencing Commission, Amendments to the Sentencing Guidelines 2, https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf

    (A) sexual abuse involving a "sexual act," as defined in 18 U.S.C. 2246(2) (including the conduct described in 18 U.S.C. 2246(2)(D) regardless of the age of the victim); or

    (B) physical abuse resulting in "serious bodily injury," as defined in the Commentary to § 1B1.1 (Application Instructions);

that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant.

For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

Additionally, "sexual act" as referenced in § 1B1.13(b)(4), is defined in 18 USCA § 2246 as:

(2) the term "sexual act" means—

    (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;

    (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

    (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or

    (D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person;

(3) the term "sexual contact" means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person;

    Here, Ms. Goodin does not identify a specific instance of sexual assault. The Government noted in its Response that in investigating defendant's allegation, it "learned that defendant did report inappropriate behavior on the part of a BOP physician in 2020." Gov.'s Resp. to Def.'s Mot.

for Compassionate Release 6, ECF No 83. However, the report made clear that the behavior was more of an inappropriate remark as opposed to a "sexual act" as defined above. The incident involved physician James Jowdy explaining a thumb injection procedure to Ms. Goodin wherein Jowdy stated: "it's like a big penis in a very small vagina." *Id.* Ex. A 2..This type of remark does not rise to the level of a "sexual act" under § 2246(2) because the reported incident did not include any type of intentional, inappropriate physical contact between Ms. Goodin and her physician. *See United States v. Russell,* 757 F. Supp. 3d 1132, 1140 (D. Idaho 2024) (defining serious injury at the hands of a correctional officer); *United States v. Backman*, No. 1:12-CR-00015, 2026 WL 95020 (D.N. Mar. Is. Jan. 14, 2026) (where defendant testified that the abuse she suffered at the hands of a BOP officer was verbal and not physical, the court held that she did not meet the requirements under § 1B1.13).

Accordingly, a grant of compassionate release on the basis of sexual assault is not warranted.

II.    Rehabilitative Care Allegations

Ms. Goodin raises inadequate rehabilitative services as an alternative basis for compassionate release. She argues that adequate services are not made available to her and that there is a "lack of rehabilitation and inability to acquire vital and necessary psychological services, rehabilitation, vocation, education, and evidence-based recidivism-reducing programming while in the custody of [BOP] and specifically at FCI Waseca, who has been materially affected by the pandemic and is experiencing extreme short-staffing." Def.'s Mot. 7. She further states that she has "not been able to acquire vital and necessary mental health counseling and have NOT been provided ANY counseling at FCI Waseca." *Id.*

However, according to her medical records, Ms. Goodin appears to be receiving adequate rehabilitative services. From 2013, the year she was first incarcerated, to 2023 (Bureau of Prisons Health Services PPDs Ex. 1, at 66, 114, ECF No. 83), Ms. Goodin was prescribed medication (Bureau of Prisons Health Services Ex. 1, at 6, 25-27, 56-57, 95-96), had lab tests taken (Bureau of Prisons Health Services Ex. 1, at 11, 18, 21, 29, 33, 35, 104-111), received counseling (Bureau of Prisons Health Services Ex. 1, at 12, 19, 23), preventive healthcare (Goodin Exhibits 30), dental care (Bureau of Prisons Dental Soap/Admin Encounter Ex. 3, at 98-99), and treatment for a work-related injury assessment (Bureau of Prisons Health Services Clinical Encounter Ex. 1, at 41). The record thus shows she is seen regularly for treatment. Goodin Exhibits 4. In addition to adequate medical treatment, Ms. Goodin continues to have access to educational courses and has completed courses ranging from "intro to government" and an apprenticeship in physical therapy. (Inmate Education Data Ex. 3, at 123-124).

Moreover, the record does not show that Ms. Goodin's ability to access rehabilitative services within the environment of a correctional facility has been substantially diminished, nor that she is not receiving medical care. Instead, the record demonstrates that she remains able to seek out, and has indeed sought out and received, medical and psychological treatment, as well as prescriptions to cope with her ailments. As such, even accounting for Ms. Goodin's assertions of inadequate treatment, her medical circumstances at present fall short of establishing her entitlement to compassionate release. See, e.g., *United States v. Rodriguez*, 424 F. Supp. 3d 674, 682 (N.D. Cal. 2019) (collecting cases on the showing of "the severity of deterioration" in medical circumstances "required for compassionate release). Furthermore, her access to medical care does not demonstrate the level of severity of deterioration in her medical condition that courts have required for compassionate release. *See, e.g., United States v. Bellamy*, No. 15-CV-1658-JRT-LIB,

6—OPINION AND ORDER

2019 WL 3340699, at *3 (D. Minn. July 25, 2019) (granting compassionate release to 71 year-old wheelchair bound defendant who had heart problems, and suffered from diabetic kidney disease, among other conditions); *United States v. Gasich*, No. 2:14-CR-63, 2019 WL 4261614, at *1 (N.D. Ind. Sept. 9, 2019) (granting compassionate release for defendant who had an estimated four months to live). At least on this record, Ms. Goodin has not satisfied the "medical condition" reason for compassionate release.

Accordingly, a grant of compassionate release on the basis of inadequate access to rehabilitative and educational services is not warranted.

III.    Covid-19 Pandemic Allegations

Ms. Goodin raises the negative effects of the COVID-19 pandemic as yet another basis for compassionate release. However, she fails to demonstrate that the effects of the pandemic affected her differently than other similarly situated inmates at BOP facilities across the country.

Generalized issues with a sentence—that is, complaints any inmate could have about prison conditions—do not rise to the level of extraordinary and compelling circumstances. *See United States v. Navarrette-Aguilar*, No. 3:12-cr-00373-HZ-1, 2022 U.S. Dist. LEXIS 123853, at *2–3 (D. Or. July 8, 2022). Motions criticizing prison conditions during the COVID-19 pandemic are not specific and individualized enough to satisfy the extraordinary and compelling circumstances test.  *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread").

Ms. Goodin presents no information specific to her own circumstances. Any inmate at FCI Waseca could say what she has said about the conditions there—indeed, "many have through

copied-and-pasted templates." *See United States v. Broadnax*, No.3:22-cr-00365-IM, 2023 WL 6373006, at *2 (D. Or. Sept. 28, 2023). "Every prisoner in the facility and other BOP facilities is subject to the similar conditions brought about by the COVID-19 pandemic; [Defendant] has not explained why he should be given special or unique treatment." *United States v. Lischewski*, 2020 WL 6562311, at *2 (N. D. Cal. Nov. 9, 2020).

Accordingly, a grant of compassionate release on the basis of COVID-19 is not warranted.

IV.    Section 3553(a) Factors

Finally, even if the Court were to find extraordinary and compelling circumstances, it would still deny Ms. Goodin's motion based on the § 3553(a) factors. When assessing whether a defendant remains a danger to the community, the Policy Statement from U.S.S.G. § 1B1.13 directs the Court to consult the factors listed in 18 U.S.C. § 3142(g), which includes: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including their physical and mental condition, past conduct, history relating to drug or alcohol abuse, criminal history; (4) and whether, at the time of the current offense, the person was on probation, on parole, or on other release pending completion of a sentence. *See United States v. Spears*, Case No. 98-cr-0208-SI-22, 2019 WL 5190877, at *5 (D. Or. Oct. 15, 2019).

Here, Ms. Goodin's lengthy criminal history, including the nature of her convictions, and her demonstrated record of noncompliance with conditions of court orders weigh against her. Presentence Investigation Report (PSR) 17, ECF No. 27. Ms. Goodin is a career offender who, addition to the current offenses present in this instance, has participated in approximately twenty-seven additional robberies, burglaries, and automobile thefts. PSR 2, 9. She was arrested for criminal conduct that has increased in severity since 1995; starting with comparatively minor

8—OPINION AND ORDER

offenses such as unauthorized use of a motor vehicle and later graduating to armed bank robbery and possession of a firearm in 2011. PSR 16-19, 1. During bank robberies, her conduct was made more severe by her method, which included the use of various disguises, as well as threats to shoot employees by exposing a gun in a clutch purse. PSR 5.

Reducing Ms. Goodin's sentence would undermine the seriousness of the offense, respect for the law, and any afforded deterrence. Additionally, given her record, serving the full sentence will offer Ms. Goodin to take advantage of additional BOP resources and programming. Such resources will improve the odds that, in contrast with her previous experiences on supervised release, Ms. Goodin will succeed upon release. While the Court acknowledges that U.S.S.G. § 1B1.13 is not binding, Ms. Goodin's failure to demonstrate that she is no longer a danger to the community correctly informs the Court's decision. Although the Court commends Ms. Goodin on her efforts and echoes her hopes for redemption, it nevertheless believes that she still presents a danger to the community. Considering her extensive criminal history and recidivist tendencies, the Court finds that Ms. Goodin, and the community, will benefit from her continued treatment under the services offered by the BOP for the full duration of her sentence.

## CONCLUSION

Ms. Goodin's Motions for Compassionate Release, ECF No. 75 in Case No. 6:11-CR-60146-MC-01 and ECF No. 61 in Case No. 6:12-CR-00021-MC-01, are DENIED.

IT IS SO ORDERED.

DATED this 17th day of March 2026.

/s/ **Michael McShane**
Michael J. McShane
United States District Judge

9—OPINION AND ORDER